**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TRANSYSTEMS CORPORATION** : | |
| : | **Civil No. 1:14-CV-1541** |
| **Plaintiff** : | |
| : | |
| **v.** : | |
| : | **(Magistrate Judge Carlson)** |
| **HUGHES ASSOCIATES, INC.,** : | |
| : | |
| **Defendant** : | |

**MEMORANDUM OPINION**

### I.   Introduction

Sometimes sanctions litigation can take on a life of its own. In a sense this is hardly surprising. Ours is an adversarial system of justice. We resolve disputes through a conflict of ideas. But conflict carries with it a potential for acrimony, and when a party is aggrieved by the conduct of the opposing party in the course of litigation, sanctions proceedings may be necessary to ensure that litigation remains a constructive conflict, the clash of ideas that leads to clarity and truth.

So while sanctions proceedings can be an essential part of an orderly legal system, ensuring that litigation is conducted in an appropriate manner, there can be a temptation for sanctions disputes to overtake and consume merits litigation. This is a temptation which often should be avoided. Therefore, when considering requests

for sanctions we are cautioned to "consider all the pertinent circumstances and balance a myriad of factors, including the trial court's need to maintain order and prevent undue delay, the prejudice (if any) to the offender's adversary, and the salutary policy favoring the disposition of cases on the merits." Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003).

This case calls to mind the potential for sanctions disputes to overtake and consume merits litigation. In the instant case, the issue of the merits is essentially resolved. The plaintiff has elected to abandon its claims and voluntarily dismiss its case. (Doc. 29.) The process by which the plaintiff has reached this conclusion, however, reveals some shortcomings, oversights and neglect in terms of preserving evidence, and complying with the discovery obligations which rest upon any party who elects to begin a dispute by filing a lawsuit. These shortcomings, in turn, have inspired sanctions litigation, with the defendants seeking both the imposition of sanctions, and discovery in support of their requests for sanctions in a case whose merits have now been fully resolved.

In this case, in the exercise of our discretion, and balancing the myriad factors which govern the exercise of that informed discretion, we conclude that, while some modest sanction is appropriate for the plaintiff's acts of neglect, it is time for this litigation to draw to a close. Therefore, for the reasons set forth below, we will grant

the plaintiff's motion to voluntarily dismiss this action, and grant the defendant's motion for sanctions, in part, by imposing a sanction of $1,000.00, for what we find to have been negligent oversights by the plaintiff in the course of discovery.

## II.  Statement of Facts and of The Case

This case began as a contract and contract indemnification action which arises out of an Air National Guard base hangar construction project.  According to the well-pleaded facts in the plaintiff's complaint on October 1, 2008, Kinsley Construction Company ("Kinsley") was awarded a contract to construct the this Air National Guard hangar. (Doc. 1, ¶6.) Kinsley then retained the plaintiff, TranSystems, to serve as fire protection consultant for the purposes of designing and installing a fire suppression system within the hangar.  (Id., ¶7.)  TranSystems in turn, hired the defendant, Hughes, as a sub-consultant to design the fire suppression system for the hangar. (Id., ¶8.) TranSystems alleges that Hughes failed to perform its engineering functions under the contract in a timely and professionally competent manner.  (Id., ¶¶15-16.) As a result TranSystems was unable to perform its contractual obligations to Kinsley. (Id.) Consequently, Kinsley removed TranSystems from this project and filed claims against TransSystems alleging that the fire suppression system designs were improper and resulted in delays. On August 17, 2012, Kinsley and TranSystems settled all claims related to this matter.  As part of this settlement, TranSystems

specifically retained the right to pursue Hughes based on its role in causing Kinsley's damages. (Doc. 1, ¶¶18-19.)

Cast against this factual background, TranSystems brought two claims against Hughes. First, TranSystems alleged that Hughes breached its contract with the plaintiff by, in part, "[f]ailing to provide designs in accordance with the skill and care required of its profession." (Id., ¶23.c.) In addition, TranSystems brought a claim of contractual indemnity against Hughes arising out of this allegedly deficient performance of professional services under the agreement between these parties. (Id., ¶¶26-29.)

Given the complexity of the claims in this litigation, and TransSystems' prior experience with the related underlying litigation with Kinsley, it should have been evident to TransSystems that this lawsuit would be a complex undertaking, and would impose upon the plaintiff, as the party bringing these claims, an obligation to preserve documentary evidence relating to these claims. It is now apparent, however, that TransSystems was ill-prepared for the rigors of this litigation, and through inadvertence, oversight and neglect did not fulfill its obligations as a litigant to preserve discoverable evidence. Specifically, we now know that: "Between the settlement date with Kinsley and the inception of this action, plaintiff closed its York, Pennsylvania office responsible for overseeing the fire protection portion of the

Project and the staff was subsequently terminated. As part of this process, the hard drives of the individual computers were wiped clean. While plaintiff believed that all files were saved to plaintiffs main server, thus preserving them for subsequent litigation, plaintiff ultimately discovered that many employees saved their working files to their personal computers, instead of the server. Thus when the individual computers were erased, those files were permanently lost." (Doc. 36, pp. 6-7.) This oversight,[1] which occurred prior to the inception of this litigation, was regrettable on two scores. First, it was a derogation of the document preservation responsibilities

---

[1] In its sanctions motion the defendant invites us to find that this was a willful, intentional default warranting sanctions under 28 U.S.C. Section 1927. We will decline this invitation since we believe that it is counter-intuitive to conclude that the plaintiff would first intentionally destroy this material, and then elect to bring this lawsuit, knowing that discovery would eventually disclose the loss of this stored electronic information. A rational actor simply does not deliberately destroy information and then intentionally launch upon a course where the disclosure of the act of destruction is a readily foreseeable consequence. Rather the much more credible inference to draw from this fact is one of negligence and neglect, coupled with some brief temporizing once the negligent loss of this information was recognized. In our view, this conduct falls short of the showing of bad faith necessary to assess sanctions under 28 U.S.C. Section 1927. See Baker Indus., Inc. v. Cerberus Ltd., 764 F.2d 204, 208 (3d Cir. 1985) (held, bad faith is a necessary predicate to liability under section 1927). Accordingly, in the exercise of our discretion we will decline Hughes' invitation to find willful misconduct and impose Section 1927 sanctions in this case. While we reach this conclusion, we also admonish the plaintiff that candor in the face of human error is always the preferable course.

which TransSystems had as the party initiating this lawsuit, albeit one which we find was the product of neglect and not deliberate misconduct. Second, there was a regrettable and inappropriate delay in disclosing this failure to preserve evidence in anticipation of this litigation. Indeed, this fact did not become known to the Court, or opposing counsel until it was disclosed by plaintiff's counsel in February 2016 during this sanctions litigation, nearly two years after this lawsuit began and this evidence was lost by TransSystems. Much time, and trouble, could have been avoided by an earlier and more fulsome disclosure of this oversight.

This failure to retain electronically stored information was then compounded by delays in identifying a proper Rule 30(b)(6) deponent who could have testified to document retention issues, delays which compelled the extension of the discovery deadline in this case. While TransSystems has provided an explanation for the delays in identifying a proper records custodian in this setting, since it had previously discharged the pertinent and knowledgeable employees, this process once again underscores that the plaintiff was ill-prepared to pursue this litigation, and was neglectful in its approach to the lawsuit which it brought against Hughes.[2]

---

[2]This lack of foresight, planning and preparation was also evidenced in the initial failure of TransSystems to have an expert report prepared to support its professional negligence claim, an issue which was litigated before this Court. Ultimately, TransSystems cured this defect by tendering to the court and opposing counsel a certificate of merit as required by Pa.R.C.P. No. 1042.3, albeit a fairly

After seeking several extensions in order to try to address these cascading discovery deficiencies, on January 14, 2016, TransSystems made a decision that it could not sustain this litigation, and filed a notice of voluntary dismissal of this lawsuit. (Doc. 29.) Aggrieved by the plaintiffs' failure to show due care in the discharge of its discovery obligations, Hughes objected to any unconditional voluntary dismissal of this action, and filed a motion for sanctions. (Doc. 33.) That motion is now fully briefed by the parties, and is, therefore, ripe for resolution.

For the reasons set forth below, we will grant the plaintiff's motions to voluntarily dismiss this action, and grant the defendant's motion for sanctions, in part, by imposing a sanction of $1,000.00, for what we find to have been negligent oversights by the plaintiff in the course of discovery.

---

summary certificate of merit. In this sanctions motion, Hughes argues with great force that this certificate of merit was so inadequate that it also represented sanctionable misconduct by TransSystems, and urges us to permit discovery on this issue. We have carefully considered this argument, but in the exercise of our discretion have decided not to follow this path. In our view any deficiencies in this certificate of merit would go to the weight to be afforded to the expert's opinion, an issue which we do not need to reach in light of the plaintiff's decision to abandon this lawsuit. These inadequacies are not, however, so glaring that they would warrant imposition of sanctions. Therefore, we do not believe that this conduct is independently sanctionable, and we conclude that the interests of the court, and the parties, are not served by prolonging this litigation for the purpose of conducting discovery on this collateral question.

### III. Discussion

In determining how best to exercise our discretion in drawing this litigation to a close, we begin by observing that, in our view, the merits litigation of this lawsuit is over, the plaintiff having filed a notice of voluntary dismissal with prejudice in this case. (Doc. 29.) However, as Hughes aptly notes, when litigation has proceeded as far as this lawsuit, the plaintiff does not have an untrammeled right to abandon the lawsuit. Instead, at this juncture: "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P., Rule 41(a)(2).

"A motion for voluntary dismissal under Rule 41(a)(2) lies within the sound discretion of the district court. Citizens Sav. Ass'n v. Franciscus, 120 F.R.D. 22, 24 (M.D.Pa.1988) (citing Ferguson v. Eakle, 492 F.2d 26, 28 (3d Cir.1974)). 'The purpose of the grant of discretion under Rule 41(a)(2) ... is primarily to prevent voluntary dismissals which unfairly affect the other side, and to permit the imposition of curative conditions.' Charles A. Wright & Arthur R. Miller ('Wright & Miller'), 9 Fed. Prac. & Proc. Civ.2d § 2364 n. 19 (collecting some of the 'many, many cases' so holding)." Dodge-Regupol, Inc. v. RB Rubber Products, Inc., 585 F. Supp. 2d 645, 652 (M.D. Pa. 2008). In this case, Hughes objects to the unconditional dismissal of this action, arguing that it has been prejudiced by TransSystems' dilatory approach

to discovery. Therefore, Hughes seeks sanctions against TransSystems as the price of abandoning what the plaintiff now regards as an improvident lawsuit.

This motion for sanctions, in turn, implicates a different series of discretionary considerations for the Court. The standards governing motions for sanctions are familiar ones. With respect to such motions, our exercise of discretion is guided by settled case law describing the responsibilities of the Court when considering sanctions against parties. At the outset, it is well-settled that a district court has the inherent power to sanction parties appearing before it for refusing to comply with its orders and to control litigation before it. See, e.g., Tracinda Corp. v. DaimlerChrysler AG, 502 F.3d 212, 242 (3d Cir. 2007). Indeed, the inherent power of the Court to act in this area has long been recognized by the United States Supreme Court, which has held that:

> It has long been understood that "[c]ertain implied powers must necessarily result to our Courts of justice from the nature of their institution," powers "which cannot be dispensed with in a Court, because they are necessary to the exercise of all others." United States v. Hudson, 7 Cranch 32, 34, 3 L.Ed. 259 (1812); see also Roadway Express, Inc. v. Piper, 447 U.S. 752, 764, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980) (citing Hudson). For this reason, "Courts of justice are universally acknowledged to be vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates." Anderson v. Dunn, 6 Wheat. 204, 227, 5 L.Ed. 242 (1821); see also Ex parte Robinson, 19 Wall. 505, 510, 22 L.Ed. 205 (1874). These powers are "governed not by rule or statute but by the control necessarily vested in courts to manage their own

> affairs so as to achieve the orderly and expeditious disposition of cases." Link v. Wabash R. Co., 370 U.S. 626, 630-631, 82 S.Ct. 1386, 1388-1389, 8 L.Ed.2d 734 (1962).

Chambers v. NASCO, Inc. 501 U.S. 32, 43 (1991).

Sanctions decisions rest in the sound discretion of the court and, if a district court awards sanctions pursuant to its inherent authority, such an award may only be reviewed for abuse of discretion, which will be found only where "the court's decision rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." In re Prudential Ins. Co. Am. Sales Practice Litig. Actions, 278 F.3d 175, 181 (3d Cir. 2002) (quoting In re Orthopedic Bone Screw Products Liability Litig., 193 F.3d 781, 795 (3d Cir. 1999)). Yet while this court doubtless has the discretion to order imposition of sanctions in appropriate cases, the exercise of this discretion is guided by certain basic principles. Foremost among these principles is the tenet that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the court. See Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d. Cir. 1999). This basic, but pivotal, aspect of the exercise of discretion in this area, has been voiced in many ways. Thus, it is well established that, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion. A primary aspect of that

discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." Chambers v. NASCO, Inc. 501 U.S. at 44-45 (citation omitted). Therefore, in exercising this authority we are cautioned that:

> [A] district court must ensure that there is an adequate factual predicate for flexing its substantial muscle under its inherent powers, and must also ensure that the sanction is tailored to address the harm identified. In exercising its discretion under its inherent powers, the court should be guided by the same considerations that guide it in the imposition of sanctions under the Federal Rules. First, the court must consider the conduct at issue and explain why the conduct warrants sanction.

Republic of Philippines v. Westinghouse Elec. Corp. 43 F.3d at 74.

Moreover:

> [H]aving evaluated the conduct at issue, the district court must specifically consider the range of permissible sanctions and explain why less severe alternatives to the sanction imposed are inadequate or inappropriate. Although the court need not "exhaust all other sanctioning mechanisms prior to resorting to its inherent power" (Landon v. Hunt, 938 F.2d at 450, 454 (3d Cir.1991)), the court must explain why it has chosen any particular sanction from the range of alternatives it has identified. See Poulis, 747 F.2d at 868 (sanctions under Fed.R.Civ.P. 16 and 37).

Id.

Further, in a discovery context it is clear that the court may, in the exercise of its discretion, impose sanctions against parties who have been found to have failed to properly preserve electronically stored information that would be relevant to

litigation, in anticipation of that litigation.  Zubulake v. UBS Warburg LLC, 229 F.R.D. 422, 433 (S.D.N.Y. 2004).  On this score, the duty to preserve electronically stored information is an on-going one, and it is ultimately the responsibility of the party to take reasonable steps to preserve this information.  Id.  Moreover, this duty extends to both intentional and negligent failures to preserve.  Thus it is no defense to state that a party was negligent in its preservation duties.  Both intentional and inadvertent failures to preserve are sanctionable misconduct, although a negligent failure may warrant a lesser sanction.  Id.

Guided by these considerations, and mindful that we should "consider all the pertinent circumstances and balance a myriad of factors, including the trial court's need to maintain order and prevent undue delay, the prejudice . . . to the offender's adversary, and the salutary policy favoring the disposition of cases on the merits," Young v. Gordon, 330 F.3d 76, 81 (1st Cir. 2003), we find that the failure of TransSystems to preserve its electronically stored information following the resolution of its dispute with Kinsley but prior to the filing of this lawsuit constituted a derogation of the plaintiff's duties as a litigant bringing a claim in federal court.  On this score, we conclude that the stored data which was discarded would have been discoverable in this litigation, and the destruction of this information, which occurred after the resolution of the Kinsley dispute but before the filing of this lawsuit, took

place at a time when the need to preserve this electronically stored information was reasonably foreseeable.

Having reached these conclusions, however, we find that the failure to preserve this data was an act of negligence and inadvertence, since we conclude that a party would not intentionally discard discoverable material and then file a lawsuit, a course which seems calculated to reveal this discovery deficiency. We also note that it is undisputed that the plaintiff continued to try to comply with its on-going discovery responsibilities, by releasing information, including stored electronic information through October of 2015. (Doc. 24, p.5.) Yet, while the loss of this ESI seems an act of negligence, we conclude that this negligence was exacerbated by a delay in disclosure of the loss of this information by the plaintiff. In life, and in litigation, candor is always the best course. It avoids confusion and criticism, and prevents others from perceiving darker motives behind altogether human shortcomings. The negligent failure to preserve this ESI and the unaccountable delay in disclosing this oversight and inadvertence, taken together, in our view warrant some sanction against the plaintiff. However, mindful of the fact that this lawsuit has now drawn to a close on its merits, and recognizing that any efforts to calculate sanctionable costs directly attributable to discovery shortcomings would be complicated and unduly prolong this

litigation,[3] we choose another path.

We adopt this course understanding that sanctions should always be narrowly tailored to meet the misconduct, and should entail no greater punishment than is reasonably necessary to address the specific wrongdoing that confronts the Court. See Klein v. Stahl, GMBH & Co., Maschinefabrik, 185 F.3d 98 (3d. Cir. 1999). Therefore, in appropriate cases we may "properly exercise our discretion by electing to simply impose a nominal monetary sanction on a party whose conduct may warrant some penalty. See Skinner v. E.I. Du Pont De Nemours and Co., No. 07–384, 2009 WL 783329 (D.Del. March 25, 2009) (imposing nominal sanctions)." O'Donnell v. Pennsylvania Dep't of Corr., No. 3:09-CV-1173, 2011 WL 3163230, at *11 (M.D. Pa. July 26, 2011).

This is the course we will follow in the instant case. In this case, the plaintiffs

---

[3]On this score, we note that, while Hughes has provided some information in connection with this sanction motions, it did not seek to compel discovery during the merits litigation itself, and the task of calculating any more robust, and tailored, sanctions would entail a *post hoc*, and contested, exercise in attributing counsel's time and efforts to discovery matters relating to the inadvertent failure to preserve these records. We would then have to weigh and take into account the negligent nature of this failure. We would also have to consider the extent to which disclosures were made by the plaintiff in determining the degree of prejudice suffered by Hughes. This process would be protracted; it would involve discovery, factual development and evidentiary proceedings; and would be potentially expensive for all parties, a course that seems ill-advised given that the merits of the case are no longer in dispute.

have acknowledged that its underlying dispute which it has now abandoned entailed contractual overcharges which exceeded $500,000. (Doc. 36, p.5.) Given the scope of this dispute, which the plaintiff improvidently pursued and then abandoned, we believe that a nominal sanction of $1,000 would be sufficient, but not greater than necessary, to sanction this negligent failure to preserve evidence, and underscore the importance of scrupulous adherence to discovery obligations by any party that chooses to bring a lawsuit.

An appropriate order follows.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge